Steven FEE, Appellant,

v.

The STATE of Texas, Appellee.

No. 04–84–00252–CR.

Court of Appeals of Texas,
San Antonio.

Dec. 31, 1986.

Richard Langlois, San Antonio, for appellant.

Sam Millsap, Jr., Charles Strauss, Barbara Hervey, Criminal Dist. Attys., San Antonio, for appellee.

Before CANTU, REEVES and TIJERINA,* JJ.

## OPINION

REEVES, Justice.

A jury found appellant, Steven Fee, guilty of Engaging in Organized Criminal Activity. The court assessed punishment at 50 years' in the Department of Corrections.

The indictment charges:

... on or about the 11TH day of AUGUST, A.D., 1983, JOSE L. ARAUJO, THOMAS SCOTT BATES, STEVEN FEE, BENJAMIN A. MORGAN, JERRY LEE PIERCE, JOSE JORGE TREVINO, JR., and JAMES HENRY WOERNER, JR., hereinafter called defendants, together with others unknown to this Grand Jury, with intent to establish, maintain and participate in a combination and in the profits of a combination, did then and there conspire and agree to commit and did commit the criminal offense of Theft over $20,000.00, and in pursuance of such agreement the said defendants performed overt acts as follows, to-wit:

On or about the 11TH day of AUGUST, A.D., 1983, in Bexar County, Texas, STEVEN FEE, JERRY LEE PIERCE, BENJAMIN A. MORGAN,

* Associate Justice Tijerina not participating.

JOSE L. ARAUJO, THOMAS SCOTT BATES, and JAMES HENRY WOERNER, JR., with the intent to deprive the owner, MICHAEL POLANSKY, of property, namely: A 1979 International truck tractor and a 1981 Budd flatbed trailer, did unlawfully appropriate said property by acquiring and otherwise exercising control over said property, said property being other than real property which had an aggregate value of $10,000.00 or more, without the effective consent of the owner; and

On or about the 7TH day of SEPTEMBER, A.D., 1983, in Bexar County, Texas, STEVEN FEE, JERRY LEE PIERCE, BENJAMIN A. MORGAN, JOE JORGE TREVINO, JR., and THOMAS SCOTT BATES, with the intent to deprive the owner, MICHAEL BRASHEAR, of property, namely: A 1983 White truck tractor and a 1983 Aztec platform trailer, did unlawfully appropriate said property by acquiring and otherwise exercising control over said property, said property being other than real property which had an aggregate value of $20,-000.00 or more, without the effective consent of the owner;

The material facts begin with Mr. Cruz Martinez, the lessee of ten acres of property in San Antonio. Mr. Martinez uses the property as a residence for himself and his family and for conducting his salvage business.

In early August 1983, Jerry Lee Pierce subleased a portion of Martinez's property. Two or three days later, he informed Martinez that a tractor-trailer would be arriving with a load of steel Pierce had sold. Later that day, Benjamin Morgan arrived with the load and parked it across the road from Martinez's property. After Pierce arrived, Morgan drove the International rig onto that portion of Martinez's property subleased by Pierce. An hour later, Steven Fee arrived with a group of men. Sometime that evening the group began cutting up the tractor and trailer.

That same evening, Mr. Martinez took his family to a dance. When the family returned home about 4:00 A.M., Mr. Martinez noticed a light coming from Pierce's portion of the property. He and his son, Jesse Martinez, investigated. When they got there, Mr. Martinez saw a group of men, including James Woerner, Pierce, and Fee cutting up the tractor and trailer. At trial Mr. Martinez testified that while he did not see Fee actually cut any part of the rig, he did see a cutting torch in his hand. When Mr. Martinez asked who owned the rig, Fee said it was "our merchandise." Mr. Martinez returned to his house. When he got there, he saw Fee's car parked in the front. Morgan was sitting inside listening to a police radio.

The next morning, Bates hauled most of the pieces of the tractor and trailer away. Thereafter, Fee informed Martinez that he had sold the load of steel that was on the trailer when it first arrived, and, since he had not been paid, he requested Martinez to collect and hold the proceeds of the sale should the buyer come by and pay in his absence. Martinez agreed. The buyer did come by and pay Martinez. Later, Fee showed up with Jose Araujo to collect the money. When Martinez attempted to give the cash to Fee, Fee told him to give it to Araujo, which he did.

Events then jump to early September 1983, at which time a second International tractor with a Budd flatbed trailer was driven onto Martinez's property. Fee called Jose Trevino and asked him to pick him up at the Martinez property because his car had a flat tire. While at Martinez's property, Trevino saw the trailer turned over on its side. Shortly thereafter it was cut up. Fee asked permission to take the tractor to Trevino's property in Atascosa County. Trevino agreed and Fee drove the tractor while Trevino and Woerner followed in Trevino's car. The next day, a Department of Public Safety investigator went to Trevino's property in Atascosa County and informed Trevino that a stolen vehicle was reported on his property. Trevino gave the inspector permission to search the property during which time the stolen tractor was found.

On the same day the inspector recovered the stolen tractor, Bates hauled off the pieces of the cut-up trailer from the Martinez property. The stolen tractor's recovery set in motion an investigation which culminated in the aforementioned indictment.

Appellant's first three points of error contend the evidence is insufficient to establish beyond a reasonable doubt that Woerner, Araujo and Scott conspired to commit theft or committed theft with the intent to participate in a combination, or in the profits of a combination. Obviously, if the evidence is insufficient as to these three, Fee's conviction must be reversed because the State will have failed to prove five or more persons were involved in criminal activity as required by law. TEX.PENAL CODE ANN. §§ 71.01 and 71.02.

We begin our analysis with the pertinent law. Fee was convicted of an offense provided for in TEX.PENAL CODE ANN. § 71.02(a)(1), which states:

(a) A person commits an offense if, with the intent to establish, maintain, or participate in a combination or in the profits of a combination, he commits or conspires to commit one or more of the following:

(1) murder, capital murder, arson, aggravated robbery, robbery, burglary, theft, aggravated kidnapping, kidnapping, aggravated assault, or forgery;

Section 71.01 provides the following definitions:

(a) "Combination" means five or more persons who collaborate in carrying on criminal activities, although: ...

(2) membership in the combination may change from time to time; ...

(b) "Conspires to commit" means that a person agrees with one or more persons that they or one or more of them engage in conduct that would constitute the offense and that person and one or more of them perform an overt act in pursuance of the agreement. An agreement constituting conspiring to commit may be inferred from the acts of the parties.

■ Our Court of Criminal Appeals in *Clayton v. State*, 652 S.W.2d 950, 955–56 (Tex.Crim.App.1983) held that there are two essential elements that must be proven to support a conviction under the organized crime statute: "forbidden conduct" and "required culpability." In this case the forbidden conduct is: "conspire and agree to commit and did commit the criminal offense of Theft over $20,000.00." [1] The required culpability is: "... with intent to establish, maintain and participate in a combination and in the profits of a combination."

While the State must prove these elements, it need not prove that Woerner, Araujo and Scott participated in the theft. Section 71.03 notes:

It is no defense under Section 71.02 of this code that:

(1) one or more members of the combination are not criminally responsible for the object offense; ... or

(4) once the initial combination of five or more persons is formed there is a change in the number or identity of persons in the combination as long as two or more persons remain in the combination and are involved in a continuing course of conduct constituting an offense under this chapter.

Having set out the elements, we point out that this is essentially a circumstantial evidence case with the standard of review the same as in a direct evidence case. After reviewing the evidence in the light most favorable to the prosecution, the court must determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable

---

**1.** We note that the required proof in this case is not what is normally required by the statute. Section 71.02 is disjunctive and only requires that the accused either conspire to commit *or* commit. However, the indictment was conjunctive and accused the defendant of both conspiring *and* committing. The jury charge was also conjunctive. Fee never complained, nor does he now complain, of the conjunctive nature of the indictment. His complaint of the conjunctive nature of the charge is treated later in this opinion.

doubt. In making that determination, we must utilize the "exclusion of outstanding reasonable hypothesis" analysis. *Carlsen v. State,* 654 S.W.2d 444, 449 (Tex.Crim. App.1983).

We begin the analysis with the evidence of Woerner's involvement. Jesse Martinez testified that Woerner was present at approximately 4:00 A.M. when other members of the group were cutting the tractor trailer into pieces. While there, Jesse saw Woerner get into an argument with Pierce and leave the scene. Begnino Parra, Cruz Martinez's son-in-law, testified that the next day he saw Woerner drive up to the area where part of the group was cutting the trailer, and that Woerner remained there about 20 minutes. Jose Trevino identified Woerner as the man who, along with Fee, drove the second tractor to Trevino's property in Atascosa County.

■ The acts of conspirators, as well as circumstances surrounding their acts and conduct is evidence of an agreement to conspire to commit a crime. *Kennard v. State,* 649 S.W.2d 752, 763 (Tex.App.—Fort Worth 1983, pet. ref'd). The evidence was sufficient to show Woerner was a member of the combination.

■ We next consider Araujo's involvement. When Fee showed up at Martinez's to collect the proceeds from the sale of the steel, he was accompanied by Araujo. Fee instructed Martinez to give the money to Araujo. The only other testimony concerning Araujo came from Parra, who stated that he saw Araujo haul away an air tank and other parts which had been removed from the first International tractor-trailer. Araujo paid Pierce for the items. This evidence was insufficient to establish beyond a reasonable doubt that Araujo was part of the combination.

■ The evidence of Bates involvement is that he was the driver of the truck that hauled away most of the cut-up parts from both the International tractor-trailer and later the Budd flatbed trailer. This evidence is insufficient to prove beyond a reasonable doubt that Bates was a part of the combination.

■ Finding the evidence insufficient as to Araujo and Bates does not dictate we reverse Fee's conviction. Fee was alleged in the indictment to have conspired to commit and to have committed theft in combination with six other persons. The State has satisfied the requirements of the organized crime statute by proving that Fee and at least four other persons collaborated in carrying on the criminal activity. TEX. PENAL CODE ANN. § 71.01(a)(2).

■ Appellant's fourth point of error alleges the State failed to establish that the grand jury did not know the names of the other individuals alleged in the indictment. The indictment states that the seven named defendants, "together with others unknown to this Grand Jury," engaged in the criminal activity. The State introduced evidence that the seven people named participated in the conspiracy. This evidence was believed by the jury. Consequently, the State satisfied its burden by proving that at least five people participated in the "combination" as required by § 71.01. The State was not required to prove that the "others unknown" were in fact unknown. Thus, the "others unknown to this Grand Jury" language may be rejected as surplusage since it is not descriptive of an essential element of the offense. *Etchieson v. State,* 653 S.W.2d 930, 933 (Tex.App.—Dallas 1983, pet. ref'd).

Appellant's fourth point of error is overruled.

■ Appellant's points of error five and six complain that the trial court erred in denying his requested charge concerning whether Cruz Martinez and his son, Jesse were accomplice witnesses. The testimony of both men comprised a significant portion of the State's case. If the jury found both or either an accomplice, uncorroborated testimony, sufficient in itself, would be insufficient to convict the appellant. TEX.

CODE CRIM.PROC.ANN. art. 38.14.[2] Our Court of Criminal Appeals has cogently set out the law of accomplice as it relates to this case:

> An accomplice witness is someone who participated with another before, during or after the commission of a crime; one is not an accomplice witness who cannot be prosecuted for the offense with which the accused is charged. *Ferguson v. State,* 573 S.W.2d 516 (Tex.Crim.App. 1978). While mere presence of an accused at the scene of an offense is not sufficient in itself to support a conviction, V.T.C.A.PENAL CODE, § 7.02(a)(2), it is a circumstance tending to prove guilt, which, combined with other facts, may suffice to show the accused was a participant. *Medellin v. State,* 617 S.W.2d 229 (Tex.Crim.App.1981). In determining whether a person was a participant in an offense the courts may look to events before, during, and after commission of the offense, including actions which show an understanding and common design to do a certain act. *Alexander v. State,* 607 S.W.2d 551 (Tex.Crim. App.1980).

*Harris v. State,* 645 S.W.2d 447, 457–58 (Tex.Crim.App.1983). When it is clear from the evidence that the witness was not an accomplice, no charge need be given to the jury either that a witness is an accomplice as a matter of law or that the jury is to decide whether the witness is an accomplice. *Id.* at 456.

The only evidence linking Cruz Martinez to the conspiracy is that he leased some property to Jerry Pierce. Pierce and Martinez's son were superficial acquaintances, and it was through that acquaintance that Martinez knew Pierce. In the early morning hours Martinez noticed lights in the area leased to Pierce and, upon inspection, found part of the group cutting up a trailer. When Martinez questioned the activity, he was assured by Fee that he (Fee) owned the trailer, every thing was fine, and he was not to worry. Later, Martinez was asked by Pierce to collect for a payment of steel Pierce had sold; as a courtesy, Martinez agreed.

■ The evidence shows that Jesse Martinez, son of Cruz Martinez, worked with his father in the junk business. Jesse testified that he saw some of the conspirators cutting up trucks and trailers with torches and transporting various parts from the property. He further testified he observed one of the alleged conspirators throw a license plate taken from one of the trucks into the brush. Mere presence at the scene of a crime is not enough to make a witness an accomplice. *Brown v. State,* 640 S.W.2d 275, 279 (Tex.Crim.App.1982).

■ There is no evidence in the record, nor did the appellant offer any evidence, to indicate that Cruz and Jesse Martinez were anything but hard-working salvagemen who, though witness to some questionable activity, were willing to give their lessee the benefit of the doubt based on his statements that nothing illegal was going on.[3] We conclude that the trial court did not err in overruling appellant's requested charge to the jury concerning whether Cruz and Jesse Martinez were accomplices.

Points of error five and six are overruled.

Appellant's seventh and eighth points of error complain of: (1) the introduction into evidence of the testimony of the accomplice, Trevino, to an uncorroborated extraneous offense alleged to have been committed by Fee and (2) the testimony to extraneous offenses not relevant to any contested issue.

---

2. TEX.CODE CRIM.PROC.ANN. art. 38.14:
 A conviction cannot be had upon the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the offense committed; and the corroboration is not sufficient if it merely shows the commission of the offense.

3. We note that while to someone not in the salvage business, cutting vehicles at 4:00 a.m. would be highly suspicious, the Martinez' testified that during their numerous years in the salvage business, they often worked through the night cutting up equipment and other items.

■ At a hearing outside the presence of the jury, the question of corroboration of the accomplice witness did come up, and the appellant did object to Trevino's testimony. The appellant also objected to the testimony on several other unrelated grounds, including the proper venue for the trial of the case. However, the only ruling from the trial court was: "Under the law it's very liberal as far as venue is concerned, they can file in any county. I will overrule the objection." By failing to get a ruling on his objection concerning corroboration, Fee waived the objection. *Williams v. Meyer*, 629 S.W.2d 257, 259 (Tex.App.—Waco 1982, writ ref'd n.r.e.).

■ Trevino then continued his testimony in front of the jury. While appellant claims such testimony should have been excluded because it was not relevant, he failed to object. Any error was waived by appellant's failure to object to each offering of this evidence. *Johnson v. State*, 651 S.W.2d 303, 312 (Tex.App.—San Antonio 1983, no pet.).

Points of error seven and eight are overruled.

Points of error nine, ten, eleven, twelve and seventeen concern the allegation in the indictment that the conspirators "did commit the offense of Theft over $20,000.00" in August 1983. Prior to September 1983, theft of property valued at $10,000 or more was punishable as a second degree felony. Effective September 1, 1983, that amount was increased to property valued at $20,000 or more. TEX.PENAL CODE ANN. § 31.03(e)(5). Fee takes the novel position that since, at the time he was indicted for the crime, the theft statute spoke only of theft "$10,000 or more," the indictment fails to allege a theft under any then existing statute. He alternatively argues that he was charged with theft over $20,000 pursuant to a statute which became effective only after the crime. We find the points meritless.

■ The value of the property must be alleged if it effects the punishment. *Standley v. State*, 517 S.W.2d 538, 540 (Tex.Crim.App.1975). By charging him with stealing property valued at more than $20,000, the indictment more accurately informed Fee of the value of the items allegedly stolen than had it merely charged him with theft of property valued at more than $10,000. Of course, that is the purpose of the charging instrument—to inform the person charged. *See Adams v. State*, 707 S.W.2d 900 (Tex.Crim.App.1986). Proof that the stolen property is worth more than $20,000 is proof that it is worth more than $10,000. Under the then-existing statute, it did not matter what amount greater than $10,000 was alleged, the crime's classification did not change, and could be ascertained by reading of the indictment. *See Benoit v. State*, 561 S.W.2d 810, 814 (Tex. Crim.App.1977). There is no basis to Fee's claim that he was not charged under any theft statute existing at the time of the crime.

■ Having found that the defendant was charged under the theft law existing at the time of the offense, we find no merit to his alternate complaints that he was improperly charged under the current theft statute. This is an ex post facto argument. We note that even if the defendant had been charged under the new provision, there would have been no ex post facto problem since, as indicted and convicted, his potential punishment would have been the same. *See Betancourt v. State*, 590 S.W.2d 487, 489 (Tex.Crim.App.1979).

Points of error nine, ten, eleven, twelve and seventeen are overruled.

■ In point of error thirteen appellant alleges that the trial court should have granted his motion to quash the indictment since it was duplicitous and therefore failed to allege a specific offense. While appellant's brief argues duplicity, his original motion did not. The closest the motion came to making that assertion was the general statements that "the indictment failed to allege an offense against the laws of the State of Texas" and "the indictment fails to state the elements of the alleged conduct which would constitute the offense allegedly conspired to by the Defendant,

and thus fails to apprise the Defendant of the nature of the conspiracy which the Defendant is alleged to have participated in...." Duplicity had been defined as "the joinder of two or more distinct offenses in the same count, or the joinder in the same count of two or more phases of the same offense where the punishment is different." *Burrell v. State*, 526 S.W.2d 799, 801, n. 1 (Tex.Crim.App.1975). Since the motion to quash does not apprise the trial court of any duplicity in the indictment, Fee is precluded from raising the contention on appeal. *Id.* at 801.

Point of error thirteen is overruled.

. Point of error fourteen contends the charge is fundamentally defective because it gives the jury two separate and distinct offenses which assess different punishment, without requiring the jury to make a finding on one or the other but not both. Points of error fifteen and sixteen contend the judgment is void because: (a) it fails to establish which offense appellant was found guilty of by the jury in that two separate distinct offenses having different penalties were submitted to the jury, and (b) the judgment reflects an improper punishment.

The part of the charge relative to point fourteen states:

> Now bearing in mind the foregoing instructions, if you believe from the evidence beyond a reasonable doubt, that ... Steven Fee ... with the intent to establish, maintain and participate in a combination and in the profits of a combination, did conspire and agree to commit *and* did commit the criminal offense of Theft ... you will find the Defendant guilty of Engaging In Organized Criminal Activity as charged in the indictment. [emphasis added]

Fee complains that as submitted, the charge incorporates two separate offenses: engaging in organized criminal activity by committing theft and engaging in organized criminal activity by conspiring to commit theft. The former is a first degree felony while the latter is a second degree felony. Fee argues that since the jury was

not instructed to make a finding on one charge or the other but not both, error was committed.

 Appellant did not object to this part of the charge. Absent an objection, appellant must establish that the alleged error was fundamental before the conviction will be reversed. To be fundamental, it must be shown that the error was so serious and harmful that it denied the defendant a fair and impartial trial. *See Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim.App.1984) (on P.D.R. 724 S.W.2d 805 (Tex.Crim.App.1986).

 We find there was no fundamental error for two reasons. First, by tracking the indictment in requiring the jury to find the appellant not only conspired to commit but also committed theft, the charge placed a greater burden on the State than required of it by § 71.02. The appellant cannot be harmed by a charge which places a greater burden upon the State. Second, since the appellant was indicted as a habitual felony offender and so found by the court in assessing punishment, it was inconsequential whether he was guilty of a second or a first degree felony. The appellant could not be harmed by any alleged failure by the jury to find him guilty of either a first or second degree felony since under either finding he was still susceptible to punishment as a habitual felony offender.

Points of error fourteen and fifteen are overruled.

 Appellant is correct in asserting in point of error sixteen that the judgment is insufficient since it does not set out what statute authorized the trial court to assess the 50 year confinement. This does not, however, require a reversal; the judgment may be reformed. *Howell v. State*, 563 S.W.2d 933, 936 (Tex.Crim.App.1978); *Cadena v. State*, 504 S.W.2d 910, 912 (Tex. Crim.App.1974).

Appellant's point of error sixteen is overruled.

It is ordered that the judgment be reformed to reflect that appellant's punishment was enhanced pursuant to TEX.PENAL CODE ANN. § 12.42(d).[4]

The judgment of the trial court, as reformed, is affirmed.

4. TEX.PENAL CODE ANN. § 12.42(d):

(d) If it be shown on the trial of any felony offense that the defendant has previously been finally convicted of *two felony offenses,* and the *second* previous felony conviction is for an offense that occurred subsequent to the first previous conviction having become final, on conviction he shall be punished by confinement in the Texas Department of Corrections for life, or for any term of not more than 99 years or less than 25 years. [Emphasis added.]