The STATE of Texas, Appellant,

v.

Thomas C. ELLIOTT, Appellee.

No. 10–93–133–CR.

Court of Appeals of Texas, Waco.

June 29, 1994.

John B. Holmes, Jr., Crim. Dist. Atty., Linda A. West, Jeff Laird, Asst. Dist. Attys., Houston, for appellant.

Patrick Shelton, Houston, for appellee.

Before THOMAS, C.J., and CUMMINGS and VANCE, JJ.

## OPINION

VANCE, Justice.

The State appeals from an order suppressing evidence obtained when a Houston Metropolitan Transit Authority (Metro) police officer arrested Thomas Elliott for driving while intoxicated. *See* TEX.REV.CIV.STAT. ANN. art. 6701*l*–1 (Vernon Supp.1994). Elliott argued that the officer did not have the authority to detain him because he was not committing an offense involving real or personal property owned or controlled by Metro. *See id.* art. 1118x, §§ 2(f), 13(c) (Vernon Supp.1994). The court agreed with Elliott's interpretation of the statute and granted the motion to suppress. We will reverse.

On February 5, 1993, Metro officer Parris was on assignment with a D.W.I. task force patrolling Interstate 10 east of downtown Houston. Parris' radar detector measured Elliott's speed at 74 miles per hour in a 55 miles-per-hour zone. After detaining Elliott, Parris determined that he was intoxicated and placed him under arrest.

In his suppression motion, Elliott argued that the evidence Parris obtained resulted from an illegal stop because the "arrest did [not] occur on or involve the [Metro] system" and "[Parris'] conduct violated the scope of his authority under V.A.T.S. Art. 1118x Sec. 13(c)." Relying on a published opinion issued by the Harris County District Attorney, Elliott argued that Metro officers "do not have any police authority for incidents or offenses occurring outside 'any land, easement, right of way, etc., owned and controlled by the authority.'" *See* Harris County District Attorney Opinion No. 87–5 (September 16, 1987). Elliott's argument at the hearing relied extensively on a letter written by the District Attorney on October 11, 1989, which reaffirmed his conclusion that the "arrest powers, etc. of transit peace officers are

limited to crimes involving or occurring on the real or personal property of the authority." *See* Letter from John B. Holmes, Jr., Harris County District Attorney, to Thomas C. Lambert, Chief of Metropolitan Transit Authority Police (October 11, 1989). Thus, Elliott argued, the officer did not have the power to detain him because his arrest occurred on a public interstate highway.

Recognizing that the growing population in urban areas mandated a new approach to transportation, the legislature enacted the "Metropolitan rapid transit authorities" act in 1973. TEX.REV.CIV.STAT.ANN. art. 1118x. The act allowed local governments to create rapid transit authorities with the powers necessary to establish and maintain mass transit systems providing service within their metropolitan area. *Id.* art. 1118x, §§ 3, 6. Included within this grant of power by the legislature was the power to employ and commission peace officers. *Id.* § 13(c). In 1989, the legislature extensively amended sections 2(f) and 13(c). Act of May 25, 1989, 71st Leg., R.S., ch. 671, 1989 Tex.Gen.Laws 2216. The amendments expressly related "to the authority of certain rapid transit authorities to adopt and enforce regulations, to commission peace officers, and to set forth the powers and jurisdiction of the peace officers." *Id.* As amended, section 13(c) reads:

An authority may employ and commission its own peace officers with power to make arrests in all counties where the system is located when necessary to prevent or abate the commission of an offense against the laws of the state or a political subdivision of the state when the offense or threatened offense occurs on or involves the system of the authority, to make arrests in cases of an offense involving injury or detriment to the system, to enforce all traffic laws and investigate traffic accidents which involve or occur in the system, and to provide emergency and public safety services to the system or persons who use the system.

Any person, for an authority in which the principal city has a population of more than 1.5 million according to the most recent decennial census, commissioned under this section must be a certified peace officer who meets the requirements of the Texas Commission on Law Enforcement Officer Standards and Education, who shall file with the authority the sworn oath required of peace officers, and who is vested with all the powers, privileges, and immunities of peace officers in all counties where the system is located, provides services, or is supported by a general sales and use tax.

*Id.* The entire second paragraph was added in 1989. *Id.*

No other court has been called upon to interpret this provision. Two conflicting advisory opinions have been rendered by executive officers. District Attorney Holmes expressed the opinion that the statute did not expand the jurisdiction of the Metro police beyond the property of the authority. Holmes Letter (October 11, 1989). Attorney General Jim Mattox concluded that the Metro police officer's jurisdiction included the entire geographical area in which Metro operates. Op.Tex.Att'y Gen. No. JM–1238 (1990). Neither opinion is controlling; each is merely persuasive. *See Hooten v. Enriquez*, 863 S.W.2d 522, 531 n. 14 (Tex.App.— El Paso 1993, no writ).

■ Generally, we are required to give effect to the plain language of a statute. *See Boykin v. State*, 818 S.W.2d 782, 785 (Tex. Crim.App.1991). If the language is clear and unambiguous, we presume that the legislature meant what was said in the statute, and we are not to add or subtract from the wording of the law. *See id.* "There is, of course, a legitimate exception to this plain meaning rule: where application of a statute's plain language would lead to absurd consequences that the Legislature could not *possibly* have intended, we should not apply the language literally." *Id.* If the statute leads to "absurd results," we will read the statute to arrive at a sensible interpretation, one which gives force to the assumption that the legislature would not act in an absurd way. *See id.*

■ Although perhaps inartfully drawn, we conclude that the language of the 1989 amendments to the act is clear and leads to an unambiguous result. In the amendments,

the legislature changed the definition of the word "system" in article 1118x. *See* Act of May 25, 1989, 71st Leg., R.S., ch. 671, 1989 Tex.Gen.Laws 2216. For Metro, which includes a city with a population in excess of 1.5 million according to the 1990 census (Houston), the system became the "area within the boundaries wherein service is provided or is supported by a general sales and use tax." *See* Tex.Rev.Civ.Stat.Ann. art. 1118x, § 2(f). Substituting this definition for the word "system," section 13(c) would read:

An authority may employ and commission its own peace officers with power to make arrests in all counties where the [area within the boundaries wherein service is provided or is supported by a general sales and use tax] is located when necessary to prevent or abate the commission of an offense against the laws of the state or a political subdivision of the state when the offense or threatened offense occurs on or involves the [area within the boundaries wherein service is provided or is supported by a general sales and use tax] of the authority, to make arrests in cases of an offense involving injury or detriment to the [area within the boundaries wherein service is provided or is supported by a general sales and use tax], to enforce all traffic laws and investigate traffic accidents which involve or occur in the [area within the boundaries wherein service is provided or is supported by a general sales and use tax], and to provide emergency and public safety services to the [area within the boundaries wherein service is provided or is supported by a general sales and use tax] or persons who use the [area within the boundaries wherein service is provided or is supported by a general sales and use tax].

Any person, for an authority in which the principal city has a population of more than 1.5 million according to the most recent decennial census, commissioned under this section must be a certified peace officer who meets the requirements of the Texas Commission on Law Enforcement Officer Standards and Education, who shall file with the authority the sworn oath required of peace officers, and who is vested with all the powers, privileges, and immunities of peace officers in all counties

where the [area within the boundaries wherein service is provided or is supported by a general sales and use tax] is located, provides services, or is supported by a general sales and use tax.

*See id.* §§ 2(f), 13(c). We conclude that the legislature clearly intended to broaden the jurisdiction of Metro police officers to include the authority to enforce the laws of this state throughout all of the area where Metro provides services or collects taxes. The officers' powers as peace officers are not limited to enforcing the laws only on property owned or controlled by Metro.

However, we recognize that part of the statute, if applied literally, leads to an absurd result. The last paragraph of section 13(c) seemingly contains three requirements for a person to be commissioned as a peace officer by Metro: first, the person must be a certified peace officer who meets the requirements of the Texas Commission on Law Enforcement Officer Standards and Education; second, the person must file the sworn oath required of peace officers with Metro; and, finally, the person must be vested with all the powers, privileges, and immunities of peace officers in all counties where the system is located, provides services, or is supported by a general sales and use tax. *See id.* § 13(c). However, only individuals who are employed by the state as peace officers would meet this last requirement, if it were applied literally, because only officers with state-wide jurisdiction would have all the powers, privileges and immunities of peace officers in the entire multi-county area contemplated by the statute. Thus, Metro would be limited to recruiting its police officers from the ranks of officers already working for the state. We do not believe that the legislature intended to so severely restrict the pool of officers that Metro could hire or to set up a competition between the state and Metro for qualified police officers. Thus, we decline to read and apply this portion of the statute literally. *See Boykin,* 818 S.W.2d at 785.

Instead, we will read the statute in such a way as to secure the benefit the legislature intended to confer by its enactment. *See Ward v. State,* 829 S.W.2d 787, 791 (Tex. Crim.App.1992). We conclude that this objective can be accomplished by reading out

the last "who" in the second paragraph, so that the paragraph reads:

> Any person, for an authority in which the principal city has a population of more than 1.5 million according to the most recent decennial census, commissioned under this section must be a certified peace officer who meets the requirements of the Texas Commission on Law Enforcement Officer Standards and Education, who shall file with the authority the sworn oath required of peace officers, and ... is vested with all the powers, privileges, and immunities of peace officers in all counties where the system is located, provides services, or is supported by a general sales and use tax.

*See* TEX.REV.CIV.STAT.ANN. art. 1118x, § 13(c). Thus, by our reading of the statute, a person "is vested with all the powers, privileges, and immunities of peace officers in all counties where the system is located, provides services, or is supported by a general sales and use tax" when he or she qualifies as an officer of the Metro authority. Being vested with such attributes is not a prerequisite to employment.

■ Thus, pursuant to the plain meaning of the language of the statute and to our construction of the language of section 13(c), Parris had jurisdiction to enforce the traffic laws in every county where Metro provides services. *See id.* As a police officer on traffic patrol within his jurisdiction, he had the authority to detain Elliott for the offense of speeding. *See* TEX.CODE CRIM.PROC.ANN. arts. 2.13, 14.01 (Vernon 1977); *see also* TEX. REV.CIV.STAT.ANN. art. 6701d, § 153 (Vernon 1977). After stopping Elliott, Parris could act on the information gained from his investigation of Elliott's condition and arrest him for driving while intoxicated. *See id.* Thus, the detention and arrest of Elliot were within Parris' authority as a Metro police officer on patrol in Harris county and the court erred in concluding otherwise.

The judgment of the court is reversed and this cause is remanded for further proceedings.