John Louis VICKIO, Appellant,

v.

STATE of Texas, Appellee.

Nos. 01–94–00215–CR, 01–94–00217–CR.

Court of Appeals of Texas,
Houston (1st Dist.).

Dec. 15, 1994.

Herb H. Ritchie, Greg Glass, Houston, for appellant.

John B. Holmes, Jr., Linda A. West, Jeff Hale, Houston, for appellee.

Before ANDELL, HUTSON–DUNN and PRICE,† JJ.

## OPINION

ANDELL, Justice.

Appellant, John Louis Vickio, was charged by information for the offenses of driving while intoxicated (DWI) and unlawfully carrying a weapon. After his motion to suppress was denied, appellant pled guilty to both offenses pursuant to a plea bargain. The trial court assessed punishment at two years probation, a $400 fine and 60 hours of community service for the DWI offense; and four days confinement, a $200 fine and forfeiture of the weapon for the offense of unlawfully carrying a weapon.

In four points of error, appellant complains that the trial court erred in denying his motion to suppress because the arresting officer was acting outside the scope of his statutory authority. Appellant stipulated to all evidence regarding his guilt, but maintains that the officer had no authority to detain or arrest him and thus the trial court

should have suppressed all evidence that was derived from the stop. We affirm the judgment of the trial court.

## FACTS

On August 21, 1993, at 12:05 a.m., Officer B.W. Lillard stopped appellant for travelling 90 m.p.h. in a posted 55 m.p.h. zone in the 8900 block of the Gulf Freeway. Officer Lillard determined that appellant was intoxicated and placed him under arrest. While completing an inventory of appellant's vehicle, Lillard discovered a .38 caliber Taurus handgun in the driver's side door pocket.

Officer Lillard is a certified peace officer employed by the Houston Metropolitan Transit Authority (Metro). Metro provides transportation services throughout Houston and Harris County, including the 8900 block of the Gulf Freeway. A bus route services this location during the hours of 5:40 a.m. to 8:00 p.m., but not during the time of appellant's arrest.

## STANDARD OF REVIEW

A trial court's ruling on a motion to suppress will not be set aside absent a showing of abuse of discretion. *Maddox v. State*, 682 S.W.2d 563, 564 (Tex.Crim.App.1985); *Santos v. State*, 822 S.W.2d 338, 339 (Tex. App.—Houston [1st Dist.] 1992, pet. ref'd). To determine whether the trial court abused its discretion, the evidence is viewed in the light most favorable to the trial court's ruling. *Daniels v. State*, 718 S.W.2d 702, 704 (Tex.Crim.App.), *cert. denied*, 479 U.S. 885, 107 S.Ct. 277, 93 L.Ed.2d 252 (1986), *overruled on other grounds, Juarez v. State*, 758 S.W.2d 772 (Tex.Crim.App.1988). At the hearing on a motion to suppress, the trial judge is the sole fact finder, and as such, may believe or disbelieve all of or any part of any witness' testimony. *Taylor v. State*, 604 S.W.2d 175, 177 (Tex.Crim.App.1980); *Santos*, 822 S.W.2d at 339. Any finding supported by the record will not be disturbed on appeal. *Id.*

† The Honorable Frank C. Price, former Justice, Court of Appeals, First District of Texas at Houston, participating by assignment.

## METRO'S AUTHORITY

Appellant argues that Metro police officers do not have authority to make arrests for offenses unless they involve "injury or detriment" to the Metro "system." Therefore, we must examine the statute that confers jurisdiction on Metro police officers.

■ When interpreting the intent and meaning of a statute, the court generally focuses its attention on the plain language of the statute in question. *Boykin v. State*, 818 S.W.2d 782, 785 (Tex.Crim.App.1991). The court may also consider legislative history. TEX.GOV'T CODE ANN. § 311.023(3) (Vernon 1988). "[W]here application of a statute's plain language would lead to absurd consequences that the Legislature could not possibly have intended," however, the language should not be literally applied. *Boykin*, 818 S.W.2d at 785.

Metro's authority is created by article 1118x of the Texas Revised Civil Statutes, which provides in pertinent part:

An authority may employ and commission its own peace officers with power to make arrests in all counties where the system is located when necessary to prevent or abate the commission of an offense against the laws of the state or a political subdivision of the state when the offense or threatened offense occurs on or involves the system of the authority, to make arrests in cases of an offense involving injury or detriment to the system, to enforce all traffic laws and investigate traffic accidents which involve or occur in the system, and to provide emergency and public safety services to the system or persons who use the system.

TEX.REV.CIV.STAT.ANN. art. 1118x, § 13(c) (Vernon Supp.1994).

Thus, the plain wording of § 13(c) reveals that in addition to giving Metro peace officers the right to make arrests in cases of an offense involving "injury or detriment to the system," Metro officers also have jurisdiction to:

(1) make arrests when necessary to prevent or abate the commission of an offense

against the laws of the state or a political subdivision of the state when the offense or threatened offense . . . involves the system of the authority;

(2) enforce all traffic laws and investigate traffic accidents which involve or occur in the system; and

(3) provide emergency and public safety services to the system or persons who use the system.

■ For a transit authority with a principal city having a population of more than 1.5 million persons, like Houston Metro,[1] the statute defines "system" as the area where service is provided or is supported by a general sales and use tax. TEX.REV.CIV.STAT. ANN. art. 1118x, § 2(f) (Vernon Supp.1994). Appellant stipulated that the location of his arrest was within the boundaries where Metro collects a general sales and use tax. Therefore, his arrest occurred in the "system."

Appellant argues, however, that § 2(f) merely refers to the extent of "geographical jurisdiction" (territorial limits in which authority may be exercised) available to Metro officers, and not "enforcement jurisdiction" (the authority to interpret and apply the law). *See Angel v. State*, 740 S.W.2d 727, 733–736 (Tex.Crim.App.1987). He maintains that Metro officers can act where the "system" operates or collects a general sales and use tax, but only to the extent of their enforcement authority under § 13(c).

Appellant concedes that the Houston area is populated by more than 1.5 million people and therefore, the term "system" as applied to the geographical area should include the entire Houston area. He argues however, that although it is tempting to say that a Metro officer has the authority to arrest for an offense occurring in the Houston area, a closer examination of the arrest authority of a Metro officer in combination with other provisions in the article suggest a more narrow reading.

According to appellant's interpretation of § 13(c), Metro officers only have the right to

---

1. According to the 1990 decennial census, the population of Houston, Texas, is more than 1.5 million.

make an arrest when an offense is committed that causes "injury or detriment to Metro property." He contends that if the legislature intended for Metro officers to have general enforcement jurisdiction for all offenses occurring in the area, they simply would have said so. Therefore, he argues that the term "system" as used in § 13(c) should really say "injury and detriment to Metro property." Thus, Metro officers would only have the authority to arrest for traffic offenses involving bus accidents, offenses occurring in "High Occupancy Vehicle" lanes, and offenses occurring on Metro owned property, such as building and parking lots.

As indicated above, however, the plain language of the statute indicates otherwise. The legislative history surrounding the enactment of § 13(c) also supports our interpretation of the statute. The Texas legislature originally enacted the Metropolitan Rapid Transit Authorities Act in 1973. Act of May 15, 1973, 63rd Leg., R.S., ch. 141, §§ 2(f), 13(d), 1973 Tex.Gen.Laws 302, 303, 314. The act authorized local governments to create transit authorities with the power to employ peace officers to enforce state laws on property owned by the authority, and to make arrests for offenses involving injury or detriment to property owned or controlled by the system. *Id.* at 314. In 1987, the statute was amended to allow a transit authority both to commission and to employ peace officers. The amended statute also expanded their enforcement jurisdiction to include the laws of any political subdivision of the State. Act of June 1, 1987, 70th Leg., R.S., ch. 350, § 2, 1987 Tex.Gen.Laws 1772, 1773 (renumbering section 13(d) as section 13(c)). The 1989 amendments to article 1118x specifically expanded the enforcement jurisdiction of Metro police officers to include "the powers, privileges, and immunities of peace officers." Act of May 25, 1989, 71st Leg., R.S., ch. 671, § 2, 1989 Tex.Gen.Laws 2216, 2216–17 (amending §§ 2(f) and 13(c) for transit authorities with principal cities populated with more than 1.5 million people).

■ Because a peace officer is authorized to make arrests for offenses committed within his presence, TEX.CODE CRIM.PROC.ANN. art. 14.01 (Vernon 1977), the only issue is the extent of Metro police officers' geographical jurisdiction. We have already established that under § 2(f) this geographical jurisdiction consists of the area where service is provided or is supported by a general sales and use tax.

■ Thus, when § 13(c) and § 2(f) are read in conjunction, a Metro police officer has the authority to:

(1) make arrests when necessary to prevent or abate the commission of an offense against the laws of the state or a political subdivision of the state when the offense or threatened offense ... involves *"the area within the boundaries wherein service is provided or is supported by a general sales and use tax"*;

(2) enforce all traffic laws and investigate traffic accidents which involve or occur in *"the area within the boundaries wherein service is provided or is supported by a general sales and use tax"*;

(3) make arrests in cases of an offense involving injury or detriment to the *"the area within the boundaries wherein service is provided or is supported by a general sales and use tax"*; and

(4) provide emergency and public safety services to the system or persons who use the *"the area within the boundaries wherein service is provided or is supported by a general sales and use tax."*

Finally, our interpretation of article 1118x is in accord with *State v. Elliott,* 879 S.W.2d 381, 383 (Tex.App.—Waco 1994, pet. ref'd), where the court concluded:

[T]he legislature clearly intended to broaden the jurisdiction of Metro police officers to include the authority to enforce the laws of this state throughout all of the area where Metro provides services or collects taxes. The officers' powers as peace officers are not limited to enforcing the laws only on property owned or controlled by Metro.

*Id.* at 384.

■ Appellant's definition of the word "system" with reference to the enforcement authority of Metro officers contradicts both the legislative history and the plain wording

of the statute. We read statutes in such a way as to secure the benefits the legislature intended to confer by its enactment. *Ward v. State*, 829 S.W.2d 787, 791 (Tex.Crim.App. 1992). We conclude that the legislature intended Metro police officers to have broad jurisdiction to enforce the laws and such jurisdiction is not limited merely to offenses causing injury or detriment to, or occurring on, Metro property.

### CONCLUSION

Pursuant to the legislative history and plain wording of TEX.REV.CIV.STAT.ANN. art. 1118x, §§ 2(f), 13(c) (Vernon Supp.1994), Officer Lillard had jurisdiction to enforce traffic laws. As a peace officer acting within his jurisdiction, Lillard had the authority to detain, arrest, and search appellant. Thus, the trial court did not abuse its discretion in denying appellant's motion to suppress.

We overrule appellant's sole point of error.

We affirm the judgment of the trial court in both causes.