**Kent Jay KAUFMAN, Appellant,**

**v.**

**The STATE of Texas, Appellee.**

**No. 08–93–00391–CR.**

Court of Appeals of Texas,
El Paso.

April 27, 1995.

Allen Isbell, Houston, for appellant.

John B. Holmes, Dist. Atty. of Harris County, Houston, for State/appellee.

Before BARAJAS, C.J., and KOEHLER and LARSEN, JJ.

### OPINION

BARAJAS, Chief Justice.

This is an appeal from a guilty plea resulting in a conviction for the offense of driving while intoxicated.[1] The court assessed punishment at 180 days' confinement probated for two years and a fine of $400. We affirm the judgment of conviction.

■ In Points of Error Nos. One and Two, the Appellant contends that the court erred in overruling the Appellant's motion to suppress the evidence in that the arrest was illegal because he was arrested by Metropolitan Transit Officers who were outside the scope of their authority under TEX.REV.CIV. STAT.ANN. art. 1118x (Vernon Supp.1995) and the incident did not occur or involve the Metro Authority system. At the hearing on the Appellant's motion to suppress the evidence, the State utilized the testimony of Kenneth Todd Kuhlman, a police officer em-

---

1. As noted in the Concurring Opinion, this case was transferred to the Eighth District Court of Appeals from the Fourteenth District Court of Appeals. In that regard, I take the unusual step in joining in Justice Larsen's concurrence.

ployed by the Houston Metropolitan Transit Authority (Metro). He related that on May 15, 1993 at 1:30 a.m., he and Officer J.P. Alston were driving by the 14100 block of the Northwest Freeway in Harris County, Texas. Kuhlman observed the Appellant failing to drive his car in a single lane of traffic. After seeing another such traffic violation, the officers stopped the Appellant's vehicle. After administering various sobriety tests, the officers arrested the Appellant for driving while intoxicated.

At the hearing, both parties stipulated to the following evidence:

1. Metro, the Metropolitan Transit Authority whose principal city is Houston, Texas, provides service throughout Harris County, Texas.

2. The population of Houston, Texas, according to the 1990 decennial census, is more that (sic) 1.5 million.

3. On May 15, 1993 at 1:32 a.m., Officer J.P. Alston stopped the motor vehicle which I was driving for failure to maintain a single lane of traffic at the 14100 block of N.W. Frwy located in Harris County, Texas. Officer J.P. Alston is a certified peace officer employed by Metro, who meets the requirements of the Texas Commission on Law Enforcement Officer Standards and Education. Officer J.P. Alston conducted several field sobriety test (sic) and determined that I was, in his opinion, intoxicated due to the introduction of alcohol into my body.

4. The 14100 block of N.W. Frwy is a public roadway located within the boundaries wherein Metro provides service and is also within the boundaries where Metro collects a general sales and use tax.

5. The 14100 block of N.W. Frwy is located on bus route number(s) 202 and buses ran this route during the hours of 5:32 a.m. to 8:02 p.m. on MTWTF, 1993. Mon–Fri (inclusive).

The legislature enacted the "Metropolitan transit authorities" act in 1973. TEX.REV.CIV. STAT.ANN. art. 1118x. The act provided the ability for local governments to create rapid transit authorities and provided the necessary powers to establish and maintain mass transit systems providing service within their metropolitan areas. *Id.*, at § 13(c). The legislature made extensive amendments to Sections 2(f) and 13(c) of the act in 1989. Act of May 25, 1989, 71st Leg., R.S., Ch. 671, 1989 Tex.Gen.Laws 2216. Section 13(c) reads:

An authority may employ and commission its own peace officers with power to make arrests in all counties where the system is located when necessary to prevent or abate the commission of an offense against the laws of the state or a political subdivision of the state when the offense or threatened offense occurs on or involves the system of the authority, to make arrests in cases of an offense involving injury or detriment to the system, to enforce all traffic laws and investigate traffic accidents which involve or occur in the system, and to provide emergency and public safety services to the system or persons who use the system.

The following paragraph was added in 1989. *Id.*

Any person, for an authority in which the principal city has a population of more than 1.5 million according to the most recent decennial census, commissioned under this section must be a certified peace officer who meets the requirements of the Texas Commission on Law Enforcement Officer Standards and Education, who shall file with the authority the sworn oath required of peace officers, and who is vested with all the powers, privileges, and immunities of peace officers in all counties where the system is located, provides services, or is supported by a general sales and use tax.

*Id.*

The definition of "system" is found in Section 2(f):

"System" means all real and personal property of every kind and nature whatsoever, owned, rented, leased, under the control of or operated or situated on property of, or held at any time by an authority for mass transit purposes, including (without limiting the generality of the foregoing), land, interests in land, buildings, struc-

tures, rights-of-way, easements, franchises, rail lines, bus lines, stations, platforms, terminals, rolling stock, garages, shops equipment and facilities (including vehicle parking areas and facilities), other facilities necessary or convenient for the beneficial use and access of persons and vehicles to stations, terminals, yards, cars, and buses, and control houses, signals and land, facilities and equipment for the protection and environmental enhancement of all such facilities, and, for an authority created before January 1, 1980, public parking areas, garages, facilities, and lots, and, for an authority in which the principal city has a population of more than 1.5 million according to the most recent decennial census, the area within the boundaries wherein service is provided or is supported by a general sales and use tax.

The Appellant maintains that the metro officers did not have the authority to detain him because the enforcement of laws, the violation of which is not occurring on Metro Transit Authority property or to the authorities' facilities or equipment, during time periods and on days when the "system" is not operating, falls outside the scope and purpose of metro police employment.

A similar contention was before the Waco Court of Appeals in *State v. Elliott,* 879 S.W.2d 381 (Tex.App.—Waco 1994, pet. ref'd). In *Elliott,* the defendant argued that the arresting officer did not have authority to detain him because he was not committing an offense involving the real or personal property owned or controlled by Metro. The court noted that the legislature changed the definition of "system" in 1989 to read that, in cities with a population greater than 1.5 million persons, "system" became the, "... area within the boundaries wherein service is provided or is supported by a general sales and use tax." The court then placed the definition of "system" in every place where that word occurred in Section 13(c) and found from the plain wording of the statute that the legislature clearly intended to broaden the jurisdiction of Metro police officers to include their authority to enforce state laws throughout all of the area where Metro provides services or collects taxes. Therefore, Metro

officers' powers as peace officers were not limited to enforcing the laws only on property owned or controlled by Metro. *Elliott,* 879 S.W.2d at 384.

▮ From our reading of the statute, we come to the same conclusion as the Waco court. The amended definition of "system" clearly indicates that the jurisdiction of the Metro officers is not limited to its property or the hours of operation but, rather, is co-extensive with *its* geographic limits, that is, the area supported by the general sales and use tax. As the stipulated evidence demonstrates that the detention occurred within this area, we find the Appellant's contentions to be without merit. Points of Error Nos. One and Two are overruled.

▮ In Supplemental Point of Error No. One, the Appellant asserts that the court erred in overruling the Appellant's motion to suppress the evidence because there was no showing at the suppression hearing that Metro Officer J.P. Alston is commissioned as a state police officer with state-wide jurisdiction as required by Tex.Rev.Civ.Stat.Ann. art. 1118x, § 13(c) for those transit authorities whose principal city has a population of more than 1.5 million. The State maintains that this point was not raised in the trial court for the judge's consideration and, as such, is not properly before this Court for review. *Citing Rezac v. State,* 782 S.W.2d 869, 871 (Tex.Crim.App.1990), the State argues that a trial objection stating one legal basis may not be used to support a different legal theory on appeal. As the trial judge was not given an opportunity to rule on the issue advanced by the Appellant on appeal, it is error for an appellate court to reverse the conviction on that same issue. *Rezac,* 782 S.W.2d at 871.

We agree with the State's contention. The pertinent part of the Appellant's motion to suppress the evidence reads:

> The METRO officers did not have the authority or the right to detain, and gather evidence on and from Kent Kaufman as they did. Their conduct violated the scope of their authority under Article 1118x(c), V.T.C.S.

If we assume that the Appellant meant to cite Article 1118x § 13(c), this allegation would seem to encompass his contentions. However, at the hearing on the motion to suppress the evidence, the Appellant argued only that the officer did not have reasonable suspicion to detain him. The court then made the following ruling:

> Folks, I'll deny the Motion to Suppress. Let's deal first with the jurisdictional issue, Article 1118x, subsection (c). It's the COURT'S ruling that the offense occurred in a taxable jurisdiction of a METRO Transit peace officer giving the person the authority to conduct police investigations in that area.
>
> As to the reasonable cause to temporarily detain Mr. Kaufman, there was credible testimony that there were two weaves outside the lane. In viewing the video tape, there were a number—quite a number of weaves within the lane. Quite a number that buttress the OFFICER'S testimony giving the Officer the grounds to detain Mr. Kaufman on temporary detention for suspicion of driving while intoxicated. The motion is denied in all parts.

The Appellant asserts that the mutually stipulated evidence does not demonstrate that the officers had state-wide jurisdiction to enable them to work for Metro. However, as the Appellant failed to obtain a ruling on his contention, we find that he is precluded from addressing this differing assertion on appeal. *See Fee v. State*, 722 S.W.2d 234, 241 (Tex.App.—San Antonio 1986), *reversed on other grounds*, 841 S.W.2d 392 (Tex.Crim. App.1992). Supplemental Point of Error No. One is overruled.

Having overruled each of Appellant's points of error, the judgment of the trial court is affirmed.

KOEHLER, J., not participating.

LARSEN, Justice, concurring.

I concur in the majority opinion, its reasoning and holding, but I write to point out the vagaries of the present "docket equalization" system by which various courts of appeals are required to accept transfer cases from other courts.[2] In this case, the El Paso court of appeals has been called upon to interpret the statute granting law-enforcement authority to the Metropolitan Transit Authority serving the citizens and taxpayers of Harris County. We have done so relying upon authority, not from one of the two appellate courts sitting in Houston, but from the Waco court of appeals. It seems to me that the people of Harris County, who elect judges to the First and Fourteenth District Courts of Appeals, might not have anticipated, and might not appreciate, that the appellate judges west of El Paso and Waco are deciding a question of statutory interpretation peculiar to metropolitan Houston.

I also note that the First District Court of Appeals, sitting in Houston, has belatedly had the opportunity to rule upon this issue, and has concluded, as we do here, that:

> [T]he legislature intended Metro police officers to have broad jurisdiction to enforce the laws and such jurisdiction is not limited merely to offenses causing injury or detriment to, or occurring on, Metro property. *Vickio v. State*, 902 S.W.2d 523, (Tex.App.—Houston [1st Dist.] 1994, no pet.).

*See also Lundy v. State*, 891 S.W.2d 727 (Tex.App.—Houston [1st Dist.] 1994, no pet.) (Metro officers authority not restricted to times during which Metro service runs). It seems appropriate that we at least consider the reasoning of this "home court" in reaching our own conclusions. Because all courts writing upon this subject have reached the same conclusion, we need not confront today the thorny question of which authority we should follow, were we assigned a case where the "home court" had held one way, and our

2. From time to time, the Texas Supreme Court enters an order transferring cases from the most populous appellate districts in the state to those less populous. This case was transferred from the Fourteenth Court of Appeals in Houston to the Eighth Court of Appeals in El Paso by order dated June 23, 1993. That single order transferred a total of 800 cases from the First, Fifth and Fourteenth Courts to the Eleventh (Eastland), Seventh (Amarillo), Tenth (Waco), Thirteenth (Corpus Christi), Sixth (Texarkana), and Eighth (El Paso) courts.

own court, or another court of appeals, had published authority to the contrary.

The present system of transferring cases between courts of appeals has created numerous questions: to which court of appeals must trial judges look in making their rulings? If their home court of appeals holds one way, but another court of appeals to which cases are frequently transferred holds another, what result? Must trial judges resign themselves to potential reversal even where they follow the established authority of their jurisdiction? Similarly, where is counsel to look in seeking authority to support argument in a transferred case? These are questions which remain unanswered; they are questions highlighted by this case of uniquely local impact.