**Scott Hunter HOWARD, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 05–05–00728–CR.**

Court of Appeals of Texas, Dallas.

Sept. 5, 2006.

Discretionary Review Refused April 4, 2007.

Martin LeNoir, Gary A. Udashen, Sorrels & Udashen, Dallas, for appellant.

William T. (Bill) Hill, District Attorney, Dallas, Katherine A. Drew, for The State of Texas.

Before Chief Justice THOMAS and Justices FITZGERALD and LAGARDE.[1]

1. The Honorable Sue Lagarde, Justice, Court of Appeals, Fifth District of Texas at Dallas,

## OPINION

Opinion by Justice LAGARDE.

Scott Hunter Howard was convicted of driving while intoxicated (DWI), second offense. *See* Tex. Pen.Code Ann. §§ 49.04(a), 49.09(a) (Vernon 2003). Pursuant to a plea bargain agreement, the trial court assessed punishment at 365 days' confinement in jail, probated for twenty-four months, and an $1100 fine. In three issues, appellant contends the trial court erred in denying his motion to suppress because the evidence was obtained in violation of the United States and Texas Constitutions and the Texas Transportation Code. We affirm the trial court's judgment.

## Background

On May 23, 2004, appellant was arrested by a DART[2] police officer for DWI. Appellant filed a pretrial motion to suppress, in which he sought to

suppress all seized evidence from Defendant, also testimony relating to the evidence and the seizure of the evidence because same was seized as the result of an illegal detention, arrest, search and seizure, and is thereby tainted and inadmissible as evidence under the Fourth and Fourteenth Amendments to the Constitution of the United States; Article One, Sections Nine and Ten, Constitution of the State of Texas, and Article 38.23, Texas Code of Criminal Procedure.

Retired, sitting by assignment.

2. DART is an acronym for Dallas Area Rapid Transit.

3. Appellant's motion does not cite section 451.108 of the Texas Transportation Code, on which he relies in this appeal. The only Texas statute cited in the motion to suppress is article 38.23, a procedural statute, commonly known as the Texas exclusionary rule.

Appellant's motion states no factual basis for the allegations of illegality, nor does it complain that the admission of such evidence violates any substantive Texas statute.[3]

The facts surrounding the arrest are not in dispute. At the suppression hearing, DART police officer Brandon Bonner,[4] testified he received his commission in 2002. He is a certified peace officer of the State of Texas and has taken the sworn oath police officers take. On May 23, 2004, Bonner was on duty as a DART peace officer, monitoring trains. He was riding with a partner, Officer Grimes.[5] At about 5:50 a.m., Bonner stopped appellant's vehicle after seeing it run three separate red lights: one at the intersection of the northbound service road of "I–75" (North Central Expressway) and Mockingbird; another at the intersection of Yale and "I–75"; and a third at the intersection of Greenville Avenue and Yale. Both Bonner and Grimes saw appellant run the red lights. All three red lights were on streets along a DART bus route.

After stopping appellant, Bonner approached the driver's side of appellant's vehicle. At that time, Bonner observed what he believed to be signs of intoxication. He did not, however, arrest appellant for DWI until after an officer certified to administer field sobriety tests was called to the scene, administered such tests, and concurred that appellant was intoxicated.[6] Bonner testified he could

4. Bonner identified himself simply as Officer Bonner; however, elsewhere in the record he is identified as Brandon Bonner.

5. The record does not reflect Officer Grimes's first name.

6. Bonner is not certified to give field sobriety tests. He did, however, conduct some informal, nonstandard tests on his own while waiting for the certified officer to arrive.

have arrested appellant for the traffic violations, but did not, after he determined appellant was intoxicated.

Bonner testified the "DART police department" was created in 1989. He testified the DART routes along which the traffic violations occurred were "408, DFW route, the 36 Arapaho and the 51 for downtown." However, when defense counsel showed Bonner what he represented to be three DART maps of routes 408, 51 and 36, Bonner agreed that if those maps were accurate, he was mistaken about the numbers of the routes appellant was on. Over the State's objection, the trial court took judicial notice of the DART route maps.[7] Through cross-examination, defense counsel established that appellant was never on property that was owned, rented, leased, controlled, or operated by DART, and that appellant was arrested without a warrant.

After the State rested, at defense counsel's request, the trial court took judicial notice that as of the date of the last census, the City of Dallas had a population of 1,173,549 people.[8] The trial court also admitted into evidence a document showing DART was established in 1983.

At the conclusion of the evidence, defense counsel argued Bonner did not have the lawful authority to detain appellant for a traffic violation not committed on DART property. He also argued that under Texas law, a peace officer must have specific statutory authority to detain an individual or make a warrantless arrest. Citing sections 451.001 and 451.108 of the transportation code,[9] appellant argued Bonner had no such statutory authority. Appellant cited two cases in which metropolitan transit officers were held to have county-wide jurisdiction.[10] He argued the cases were factually distinguishable and, thus, inapplicable, because the population of the City of Dallas is under 1.5 million. Appellant contended where the population is under 1.5 million and the transit authority was created after 1980, its peace officers have limited jurisdiction.

In response, the State cited section 452.110 of the transportation code and *State v. Elliott,* 879 S.W.2d 381 (Tex.App.-Waco 1994, pet. ref'd), as authority that if an officer is a certified peace officer, has taken the sworn oath of police officers, and is within the jurisdiction of the commissioning transit authority system, as defined, such officer has county-wide jurisdiction. Thus, the State argued, the stop was lawful and the population of Dallas and the date of the creation of DART are irrelevant.

At the conclusion of the hearing, the trial court denied appellant's motion to suppress. Appellant and the State entered into the plea bargain agreement, and this appeal followed.

## Standard of Review and Applicable Law

■ The standard of appellate review of a trial court's ruling on a motion to suppress is a mixed one: both deferential and *de novo.* We give almost total defer-

---

7. Defense counsel represented to the trial court the maps were taken from the DART website.

8. The State correctly points out that defense exhibit no. 5 actually lists the population of Dallas at the time of the 2000 census as 1,188,580.

9. Section 451.001 defines the transit authority system and section 451.108 deals with metropolitan transit authorities. *See* TEX. TRANSP. CODE ANN. §§ 451.001, 451.108 (Vernon Supp. 2006).

10. *Lundy v. State,* 891 S.W.2d 727 (Tex.App.-Houston [1st Dist.] 1994 no pet.) and *State v. Elliott,* 879 S.W.2d 381 (Tex.App.-Waco 1994, pet. ref'd).

ence to the trial court's determination of historical facts, especially when the findings are based on an evaluation of credibility and demeanor. *See Manzi v. State*, 88 S.W.3d 240, 243 (Tex.Crim.App.2002); *Carmouche v. State*, 10 S.W.3d 323, 327 (Tex.Crim.App.2000); *Guzman v. State*, 955 S.W.2d 85, 89 (Tex.Crim.App.1997). When, as here, the trial court does not make explicit findings of fact, we review the evidence in a light most favorable to the trial court's ruling. *See Walter v. State*, 28 S.W.3d 538, 540 (Tex.Crim.App. 2000). We review *de novo* the trial court's application of search and seizure law to those historical facts. *See Carmouche*, 10 S.W.3d at 327; *Guzman*, 955 S.W.2d at 89.

In three issues, appellant contends his arrest and detention violated the United States and Texas Constitutions and section 451.108 of the transportation code. *See* U.S. Const. amends. IV, XIV; Tex. Const. art. 1, §§ 9, 10; Tex. Transp. Code Ann. § 451.108(c) (Vernon Supp.2006). Appellant further contends that because the detention and arrest were illegal, article 38.23 of the code of criminal procedure and the "fruit of the poisonous tree" doctrine required the trial court to exclude all direct, and indirect, evidence resulting from the illegal stop and arrest. *See* Tex.Code Crim. Proc. Ann. art. 38.23(a) (Vernon 2005).

▮ Appellant incorporates the same argument for each of his issues. To the extent he contends under issue two that the Texas Constitution provides greater protection,[11] we disagree. For purposes of

warrantless arrests, state constitutional law provides a defendant no greater protection than federal law. *See Rhodes v. State*, 945 S.W.2d 115, 117 (Tex.Crim.App. 1997). Therefore, we will address appellant's issues together.

Appellant argues the legality of the stop is governed by section 451.108(c) of the transportation code because DART was established after 1987[12] and the principal municipality under the authority, Dallas, does not have a population more than 1.5 million. Appellant contends that under this statute, DART peace officers have no authority to stop, detain, or arrest unless the offense or threatened offense occurs on or involves the transit authority system or involves injury or detriment to the transit authority system.

Appellant seeks to distinguish *Lundy v. State*, 891 S.W.2d 727 (Tex.App.-Houston [1st Dist.] 1994, no pet.), and *Elliott*. Appellant argues these cases are of no assistance in resolving the issues here because they involve authority under section 451.108(d), which gives broader authority to police officers based on Houston's population of over 1.5 million. Appellant asserts that the basic rules of statutory construction compel the conclusion that Bonner acted beyond his authority; thus, the trial court erred in denying the motion to suppress.

The State responds that this case is controlled by chapter 452 of the transportation code. The State argues that appellant was lawfully stopped for a series of

---

**11.** Appellant specifically cites chapter 14 and article 38.23 of the Texas Code of Criminal Procedure and *State v. Ibarra*, 953 S.W.2d 242 (Tex.Crim.App.1997). In *Ibarra*, the Texas Court of Criminal Appeals rejected the federal "preponderance of the evidence" standard of proof on a motion to suppress in favor of a "clear and convincing" standard. *Id.* at 243–44.

**12.** We assume this date is a typographical error inasmuch as the statute on which appellant relies, section 451.108(b) of the Texas Transportation Code, refers to an authority created before 1980. *See* Tex. Transp. Code Ann. § 451.108(b).

traffic offenses observed by a peace officer acting within his authority. Therefore, the State maintains, the trial court did not abuse its discretion in denying appellant's motion to suppress.

Appellant and the State disagree on the relevance of *Elliott*[13] and *Lundy*,[14] which were both decided under the predecessor statute to section 451.108. Appellant contends they are not relevant and the State believes they provide guidance. We agree with the State that the cases provide some general guidance, but we conclude it is not necessary to rely on them to resolve the issue before us. We rely, instead, on the plain language of the various Texas statutes, hereinafter cited, which provide sufficient legal authority to validate the stop, detention, and arrest in this case.

### Analysis

■ Article 2.12(22) of the Texas Code of Criminal Procedure, in relevant part, defines peace officers as "officers commissioned ... by a regional transportation authority under Section 452.110, Transportation Code." TEX.CODE CRIM. PROC. ANN. art. 2.12(22) (Vernon 2005). The duties and powers of peace officers are set out in article 2.13, which provides:

(a) It is the duty of every peace officer to preserve the peace within the officer's jurisdiction. To effect this purpose, the officer shall use all lawful means.

(b) The officer shall:

(1) in every case authorized by the provisions of this Code, interfere without warrant to prevent or suppress crime;

* * * *

(4) arrest offenders without warrant in every case where the officer is authorized by law, in order that they may be. taken before the proper magistrate or court and be tried.

TEX.CODE CRIM. PROC. ANN. art. 2.13 (Vernon 2005). And article 14.01(b) of the code of criminal procedure provides that "[a] peace officer may arrest an offender without a warrant for any offense committed in his presence or within his view." TEX. CODE CRIM. PROC. ANN. art. 14.01(b) (Vernon 2005).

DART is a regional transit authority, authorized by chapter 452 of the Texas Transportation Code. *See Dallas Area Rapid Transit v. Plummer,* 841 S.W.2d 870, 874 (Tex.App.-Dallas 1992, writ denied) (noting that DART is a regional transit authority), *abrogated in part on other grounds by Tex. Educ. Agency v. Leeper,* 893 S.W.2d 432, 446 (Tex.1994). Section 452.110 of the transportation code is entitled "Peace Officers," and subsections (a) and (b) empower the executive committee of a regional transit authority to establish a security force and to commission employees of that security force as peace officers. *See* TEX. TRANSP. CODE ANN. § 452.110(a),

---

**13.** *Elliott* involved the predecessor statute to chapter 451.108 of the transportation code, dealing with metropolitan transit authorities. This case is controlled by chapter 452.110 of the Transportation Code. Appellant is simply mistaken that chapter 451 controls.

**14.** In *Lundy,* the issue was whether a metropolitan transit officer was acting within the scope of his statutory authority in detaining,

arresting, and charging Lundy at a time when the metropolitan buses were not running. *Lundy,* 891 S.W.2d at 728. The Houston First Court of Appeals held that the Legislature intended metropolitan transit authorities to have broad jurisdiction and that such jurisdiction is not limited in any manner as to the time of day. *Id.* at 729. That issue is not presented in this case.

(b) (Vernon 1999). Subsection (c) provides that

> [a] peace officer commissioned under Subsection (b), except as provided by Subsection (e), has all the rights, privileges, obligations, and duties of any other peace officer in this state while on the property under the control of the authority *or in the actual course and scope of the officer's employment.*

TEX. TRANSP. CODE ANN. § 452.110(c) (emphasis added).[15]

Based on the Texas statutory provisions set out above, a certified regional transit peace officer in the actual course and scope of the officer's employment has all the rights, privileges, obligations, and duties of any other peace officer in Texas. This includes the authority to detain and arrest an offender without a warrant for any offense committed in his presence or within his view. Because the evidence established that Bonner was such an officer, he was not only authorized to stop appellant after witnessing him repeatedly violate the traffic laws of this state, he had a duty to do so. After stopping appellant, Bonner, like the officer in *Elliott,* could act on the information gained from his investigation of appellant's condition and arrest him for DWI. *See Elliott,* 879 S.W.2d at 385.

Because Bonner had authority to stop and arrest appellant, the trial court did not err in denying the motion to suppress. We resolve appellant's three issues against him.

We affirm the trial court's judgment.

---

15. Subsection (e) provides that a law enforcement power granted under Section 452.110 is subordinate to the law enforcement power of a municipality in which the power is attempted to be exercised. Subsection (e) is not at issue in this appeal.