

February 2, 2026

The Honorable Joe Gonzales
Bexar County Criminal District Attorney
101 West Nueva
San Antonio, Texas 78205

**Opinion No. KP-0510**

Re: Legality of an automated traffic-enforcement system for speeding citations
(RQ-0584-KP)

Dear Mr. Gonzales:

You ask about a constable's authority to employ an automated traffic-enforcement system.[1] For context, you explain that a constable has implemented a portable traffic system that uses cameras to detect vehicles exceeding "a predetermined speed" and capture "images of the driver's face and license plate" to "issue citations by mail without interaction between officers and drivers." Brief at 2–4. Given that your office is "tasked with reviewing and prosecuting these citations," however, you raise a concern that Texas law does not authorize these systems "in the manner and means employed." *Id.* at 2. You thus seek "an opinion on the legality of a county officer's use of . . . [said] system to issue speeding citations."[2] Request Letter at 1.

**A constable's actions must be grounded in the Constitution or statutes.**

We begin with the reality that constables are county officers. *See, e.g.*, Tex. Att'y Gen. Op. No. GA-0869 (2011) at 2 (citing TEX. CONST. art. V, § 24). Indeed, "a constable's office is a part of a county's efforts to compel observance of or compliance with state law." Tex. Att'y Gen. Op. No. KP-0445 (2023) at 4. Constables may therefore enforce traffic laws and regulations, *see, e.g.*, Tex. Att'y Gen. Op. No. JM-761 (1987) at 3—including the prohibition on "driv[ing] at a speed

---

[1] *See* Letter and Brief from Hon. Joe Gonzales, Bexar Cnty. Crim. Dist. Att'y, to Hon. Ken Paxton, Tex. Att'y Gen. at 1 (Feb. 27, 2025), https://www.texasattorneygeneral.gov/sites/default/files/request-files/request/2025/RQ0584KP.pdf ("Request Letter" and "Brief," respectively); Brief at 2.

[2] We understand your use of "speeding citations" to refer to a citation issued in lieu of taking an alleged violator to a magistrate. *See* TEX. TRANSP. CODE §§ 543.003–.005. However, "additional or different facts may result in a different conclusion in a given case." Tex. Att'y Gen. Op. No. KP-0446 (2023) at 1 n.2; *see also* Brief from Hon. Mark Vojvodich, Bexar Cnty. Constable, Precinct 3 at 1–2 (rec'd June 4, 2025) (on file with the Op. Comm.) (suggesting that other mechanisms exist to notify an offense, such as a warrant and presumably referencing a summons).

greater than is reasonable and prudent under the circumstances,"[3] TEX. TRANSP. CODE § 545.351(a).

But the authority of county officers is not unbridled. In *State v. Hollins*, for example, the Texas Supreme Court made clear that county officials "possess[] only those powers 'granted in express words' or 'necessarily or fairly implied in' an express grant—powers 'not simply convenient' but 'indispensable.'" 620 S.W.3d 400, 406 (Tex. 2020) (per curiam) (quoting *Foster v. City of Waco*, 255 S.W. 1104, 1105–06 (Tex. 1923)); *see also, e.g.*, Tex. Att'y Gen. Op. No. GA-0656 (2008) at 1 (explaining that "[t]he powers of . . . a constable are limited"). Thus, "[a]ny reasonable doubt [that exists] must be resolved against an implied grant of authority." *Hollins*, 620 S.W.3d at 409.

Neither do the express prohibitions related to automated enforcement systems counsel otherwise. As you correctly highlight, section 542.2035 of the Transportation Code prohibits municipalities from implementing or operating "a photographic device, radar device, laser device, or other electrical or mechanical device designed to[] record the speed of a motor vehicle[] and obtain . . . photographs or other recorded images of[] the vehicle," the vehicle's license plate, or the vehicle's operator. TEX. TRANSP. CODE § 542.2035(a)–(b); *accord* Brief at 3. But the Legislature's silence regarding constables should not be mistaken as permission. Unlike counties and their officials, a home-rule municipality "possesses the 'full power of local self-government,'" *City of Laredo v. Laredo Merchs. Ass'n*, 550 S.W.3d 586, 592 (Tex. 2018) (quoting TEX. LOC. GOV'T CODE § 51.072(a)), and "ha[s] all power not denied by the Constitution or state law," *id.* These entities therefore look to the Legislature for "specific limitations on their power," not "specific grants of authority." *City of Laredo v. Webb Cnty.*, 220 S.W.3d 571, 576 (Tex. App.—Austin 2007, no pet.).

Section 707.020 of the Transportation Code is also of no moment. To start, that statute prohibits a "local authority" from "implement[ing] or operat[ing] a photographic traffic signal enforcement system with respect to a highway or street under the [authority's] jurisdiction." TEX. TRANSP. CODE § 707.020. However, a "[p]hotographic traffic signal enforcement system" is one "that[] consists of a camera system and vehicle sensor installed to exclusively work *in conjunction with* an electrically operated traffic-control signal," *id.* § 707.001(3) (emphasis added)—*i.e.*, "a . . . device that alternately directs traffic to stop and to proceed," *id.* § 541.304(3); *see also id.* § 707.001(5) (incorporating section 541.304 of the Transportation Code). This prohibition thus pertains to "red-light cameras for traffic enforcement." *Watson v. City of Southlake*, 594 S.W.3d 506, 512 (Tex. App.—Fort Worth 2019, pet. denied).

Nor does the breadth of this prohibition, which applies beyond municipalities,[4] alter the reality that constables "possess[] only those powers 'granted in express words' or 'necessarily or

---

[3] "A speed in excess of a posted limit 'is prima facie evidence'" of a "misdemeanor" offense. *See, e.g.*, *Dahl v. State*, 605 S.W.3d 872, 875 (Tex. App.—Houston [1st Dist.] 2020, no pet.) (quoting TEX. TRANSP. CODE §§ 545.352(a), 542.301).

[4] To be sure, section 707.020 provides "unmistakable clarity" sufficient to limit a home-rule municipality's powers. *See Laredo Merchs. Ass'n*, 550 S.W.3d at 593 (quoting *Lower Colo. River Auth. v. City of San Marcos*, 523 S.W.2d 641, 645 (Tex. 1975)).

fairly implied in' an express grant." *Hollins*, 620 S.W.3d at 406 (quoting *Foster*, 255 S.W. at 1105–06); *see also, e.g.*, Tex. Att'y Gen. Op. No. GA-0656 (2008) at 2. Section 707.020 was not enacted on an empty backdrop; instead, the Legislature had previously *authorized* local authorities to use red-light cameras. *See generally* Act of May 27, 2007, 80th Leg., R.S., ch. 1149, § 1, 2007 Tex. Gen. Laws 3924, 3924–29. But the Legislature in 2019 repealed this express authority by enacting the red-light prohibition in section 707.020. Act of May 17, 2019, 86th Leg., R.S., ch. 372, § 2, 2019 Tex. Gen. Laws 675, 675. As a result, this statute serves only to highlight the withdrawal of an authority that was never granted to constables in the first place—again demonstrating that the Legislature's silence cannot be taken as permission. *See* TEX. TRANSP. CODE §§ 541.002 (defining "local authority"), 707.001 (defining "local authority" to have the meaning in section 541.002).

> **Subchapter A of Chapter 543 of the Transportation Code does not authorize the use of an automated traffic-enforcement system to issue a speeding citation by mail.**

Chapter 543 of the Transportation Code details the authority for officers to issue speeding citations. *See generally id.* §§ 543.001–.011. As a peace officer, TEX. CODE CRIM. PROC. art. 2A.001(2), a constable "may arrest without warrant a person found committing a violation" of subtitle C, title 7 of the Transportation Code—where speeding resides. TEX. TRANSP. CODE § 543.001; *see id.* § 545.351 ("Maximum Speed Requirement"). The use of "may" indicates that the power to arrest is discretionary or permissive. *See* TEX. GOV'T CODE § 311.016(1) (defining "[m]ay"); *Hildebrand v. State*, No. 14-06-00531-CR, 2007 WL 5659038, at *4–5 (Tex. App.—Houston [14th Dist.] Oct. 18, 2007, no pet.) (mem. op., not designated for publication) (stating that officers must follow the procedures in other provisions of subchapter A of Chapter 543 "*if* they arrest an individual for committing an offense").

Once an officer decides to make an arrest, of course, the Transportation Code details the alternatives that follow: Either the alleged violator is presented to a magistrate or issued a "notice to appear."[5] TEX. TRANSP. CODE §§ 543.002–.003; *see Hildebrand*, 2007 WL 5659038, at *5. A speeding violation is one of the few offenses that requires an officer to issue a notice to appear if "the [alleged violator] makes a written promise to appear in court as provided by [s]ection 543.005."[6] TEX. TRANSP. CODE § 543.004(a)(2), (c). Section 543.005 outlines the requirements "the person arrested" and the "arresting officer" must satisfy for the alleged violator "[t]o secure release" from "custody." *Id.* § 543.005. The subchapter therefore "authorize[s] the 'arrest' of speeders" for the duration of time "it takes for the arresting officer to issue a citation (assuming the motorist is willing to sign the promise to appear)." *Azeez*, 248 S.W.3d at 190; *see also, e.g.*, *State v. Kurtz*, 152 S.W.3d 72, 79 (Tex. Crim. App. 2004) (describing "arrests" under subchapter A of Chapter 543 as "temporary detentions" that may end with a notice to appear), *superseded on other grounds by statute*, Act of May 25, 2005, 79th Leg., R.S., ch. 1015, § 1, 2005 Tex. Gen. Laws 3433, 3433 (involving authority of a city officer to conduct an arrest within their county).

---

[5] We use "notice to appear" interchangeably with a criminal "citation," as courts and a prior Attorney General opinion have done. *See, e.g.*, *Azeez v. State*, 248 S.W.3d 182, 190 (Tex. Crim. App. 2008); *State v. Dominguez*, 666 S.W.3d 633, 634 (Tex. Crim. App. 2023) (Keller, P.J., dissenting); Tex. Att'y Gen. Op. No. KP-0477 (2025) at 2 n.2.

[6] The mandatory notice to appear for speeding is subject to Chapter 703 of the Transportation Code when a person is a resident of or operates a vehicle licensed in another state or country. TEX. TRANSP. CODE § 543.004(b). *See generally id.* §§ 703.001–.004 ("Nonresident Violator Compact of 1977").

Stated differently, a speeding citation is issued only after a threshold detention of an alleged violator. *See generally* TEX. TRANSP. CODE §§ 543.003–.005.

In the situation you describe, however, the automated traffic-enforcement system results in the "issu[ance] [of] citations by mail without interaction between officers and drivers." Brief at 2. "[T]he mailing or receipt of a Class C misdemeanor citation" does not, of course, "constitute[] an arrest." *Carson v. State*, 65 S.W.3d 774, 782 (Tex. App.—Fort Worth 2001, no pet.). Indeed, the mailing and receipt of a citation "involve[s] neither physical force nor submission to the assertion of authority." *Id.* The described system thus conflicts with subchapter A of Chapter 543.[7] Accordingly, a constable's authority to issue speeding citations does not countenance the use of an automated traffic-enforcement system to issue citations by mail.

### Articles 2A.051(1) or 2A.051(2) of the Code of Criminal Procedure provide no authority to employ an automated traffic-enforcement system to issue speeding citations by mail.

Briefing received in response to your request suggests that other authority exists to employ the system to issue speeding citations by mail.[8] Specifically, one briefer cites to articles 2A.051(1) and (2)'s predecessors. First Constable Brief at 2–3; *cf. Howard v. State*, 227 S.W.3d 794, 799 (Tex. App.—Dallas 2006, pet. ref'd) (applying these articles' predecessors to a traffic violation). This contention, however, is unavailing.

Article 2A.051(1) requires constables to "preserve the peace within the officer's jurisdiction using all lawful means." TEX. CODE CRIM. PROC. art. 2A.051(1). Relatedly, constables shall "in every case authorized by" the Code of Criminal Procedure "interfere without a warrant to prevent or suppress crime." *Id.* art. 2A.051(2). Yet these articles do not *themselves* make a particular "means" lawful or authorize a particular "case . . . [to] interfere without a warrant." *Id.* art. 2A.051(1)–(2). Instead, they permit peace officers to exercise law enforcement powers within the confines of established authority. *Id.* That constables have discretion when carrying out their duties, *see* Tex. Att'y Gen. Op. No. GA-0189 (2004) at 4, does not amount to unlimited authority. As discussed, the Legislature outlined the requirements that a peace officer must meet to issue a speeding citation in lieu of presenting an alleged offender to a magistrate. *See* TEX. TRANSP. CODE

---

[7] Peace officers also have authority to issue a criminal citation for most Class C misdemeanors as well as enumerated Class A and B misdemeanors. TEX. CODE CRIM. PROC. art. 14.06(b)–(c) (addressing each, respectively). Though the authority for Class C misdemeanor citations may overlap with the authority in Chapter 543, *see, e.g.*, *McDuff v. State*, No. 11-24-00219-CR, 2024 WL 4292286, at *1 (Tex. App.—Eastland Sept. 26, 2024, no pet.) (mem. op., not designated for publication) (referring to speeding as a Class C misdemeanor), these provisions are not necessarily in conflict, *see, e.g.*, *Berrett v. State*, 152 S.W.3d 600, 606–07 (Tex. App.—Houston [1st Dist.] 2004, pet. ref'd). Section 543.005, for example, "provides an additional requirement in the context of arrests made pursuant to a violation of the Transportation Code." *Id.* at 607. We need not address article 14.06(b) because speeding citations must nevertheless meet the requirements in subchapter A of Chapter 543.

[8] Brief from Hon. Mark Vojvodich, Bexar Cnty. Constable, Precinct 3, to Hon. Ken Paxton, Tex. Att'y Gen. at 2–3 (Mar. 6, 2025) (on file with the Op. Comm.) ("First Constable Brief").

§§ 543.001–.011; *supra* pp. 3–4. That process invariably begins with an arrest,[9] TEX. TRANSP. CODE §§ 543.003–.005, and the cited articles in the Code of Criminal Procedure do not provide express or implied authority for a constable to use the automated system you describe.

> **The lack of any law authorizing use of the system to issue speeding citations by mail is dispositive.**

Our observation in 2016 carries as much weight today as it did then: "[W]hen the Legislature has authorized automated photographic or similar technology for the enforcement of traffic or vehicle laws, it has been specific about the circumstances and permissible uses of the technology." Tex. Att'y Gen. Op. No. KP-0076 (2016) at 2. We are aware of no authority permitting a constable to employ an automated traffic-enforcement system to issue speeding citations by mail, and this lack of authority is dispositive.[10] *Cf. id.* at 1–3.

---

[9] While there are different degrees of "arrest," all begin with *some* restriction on a person's liberty of movement. *See, e.g.*, *Carson*, 65 S.W.3d at 779–82; *Medford v. State*, 13 S.W.3d 769, 773 (Tex. Crim. App. 2000); *see also* TEX. CODE CRIM. PROC. art. 15.22 (describing "arrest").

[10] This conclusion obviates the need to address the other concerns—including potential constitutional concerns or the absence of approval from the Bexar County Commissioners Court—regarding the use of an automated traffic-enforcement system to issue speeding citations. *See* Brief at 1–2, 4.

## S U M M A R Y

A constable lacks authority to employ an automated traffic-enforcement system to issue speeding citations by mail.

Very truly yours,

*Ken Paxton*

K E N   P A X T O N
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

LESLEY FRENCH
Chief of Staff

D. FORREST BRUMBAUGH
Deputy Attorney General for Legal Counsel

JOSHUA C. FIVESON
Chair, Opinion Committee

AMANDA K. ROMENESKO
Assistant Attorney General, Opinion Committee